UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAIME F. CASTILLO and MARIA A. ) <br> CASTILLO, individually and d/b/a ) <br> EL BAJIO ENTERPRISES, INC. d/b/a ) <br> LA PENA RESTAURANTE and EL BAJIO ) <br> ENTERPRISES, INC. d/b/a LA PENA ) <br> RESTAURANTE, ) <br> ) <br> Defendants. ) | Judge Joan B. Gottschall <br><br> No. 14 CV 2073 |

## MEMORANDUM OPINION & ORDER

G&G Closed Circuit Events, LLC ("G&G") filed a complaint on March 25, 2014 against Jaime Castillo ("Jaime"), Maria Castillo ("Maria") and El Bajio Enterprises, Inc. ("El Bajio") doing business as La Pena Restaurante ("La Pena") (collectively, the "Defendants"). G&G alleges violations of 47 U.S.C. §§ 553 (the "Cable Act") and 605 (the "Communications Act"), contending that Defendants unlawfully televised a boxing match in their establishment despite G&G's exclusive television distribution rights for the match. Defendants answered the complaint and filed counterclaims against G&G for common law fraud and statutory fraud under Illinois law. G&G now seeks to dismiss these counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted in part and denied in part.

I. FACTS[1]

G&G is a corporation that obtained the exclusive nationwide television distribution rights for the "Austin Trout v. Saul Alvarez Fight Program," (the "Program") which took place on April 20, 2013. G&G then entered into sublicensing agreements with commercial entities throughout North America, which allowed establishments to broadcast the fight in exchange for a fee paid to G&G. Defendants never entered into an agreement with G&G. According to G&G, Defendants unlawfully exhibited the program at their establishment, La Pena Restaurante.

On May 29, 2013, Defendants received a letter from the Law Offices of Thomas P. Riley ("Riley"), which represented G&G. The letter alleged that Defendants had violated the Communications Act "and or" the Cable Act. Defendants claim that Jaime then phoned Riley's office and "someone took his information" and told Jaime that, "someone would get back to him." (Defs.' Answer at 9, ECF No. 15.) However, no one from Riley's office contacted Defendants until Defendants received "another threatening letter" from Riley's office in July 2013. Jaime called again and was given an appointment to speak with "an attorney." (*Id.*)

Jaime subsequently spoke with "the attorney," who told Jaime that "she knew he [Jaime] was guilty and that he should settle." (*Id.*) Defendants allege that "the attorney never explained the basis for their [sic] demand or the legal standing for their [sic] claims and . . . tried to convince [Jaime] that his only option was to settle, and demanded a minimum of $20,000." (*Id.*) Jaime informed the attorney that "he did not have that kind of money" and that "they would have to take him to court." (*Id.*)

Defendants allege they received "at least two more threatening letters from Riley between

---

[1] The court draws the following facts from Defendants' "Facts Common to All Counterclaims" portion of their answer to G&G's complaint and the allegations Defendants admit in their answer. (ECF No. 15.) The court accepts them as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

August 2013 and January 2014" before G&G's counsel filed suit against Defendants. In their answer to G&G's complaint, Defendants filed a two-count counterclaim alleging common law fraud (Count I) and violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et. seq.* ("ICFA") (Count II).

## II. LEGAL STANDARD

"A motion under 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 635 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a 12(b)(6) motion to dismiss, "a counterclaim must 'state a claim to relief that is plausible on its face." *Sarkis' Café, Inc. v. Sarks in the Park, LLC*, No. 12-C-9686, 2014 WL 3018002 (N.D. Ill. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) In addition, on a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). In ruling on a motion to dismiss "for failure to state a claim, the court must . . . draw all reasonable inferences in favor of the pleader." *Villareal v. El Chile, Inc.*, 601 F.Supp.2d 1011, 1014 (N.D. Ill. 2009).

## III. ANALYSIS

### A. The Common Law Fraud Counterclaim

In Count I of Defendants' counterclaims, Defendants allege that G&G committed common law fraud. G&G makes two arguments in support of its motion to dismiss Count I. It argues that (1) Defendants fail to meet the heightened pleading standard that applies to fraud claims under

3

Fed. R. Civ. P. 9(b), and (2) even assuming *arguendo* that the counterclaims were pled with the requisite particularity, Counter-Plaintiffs fail properly to allege several elements of a common law fraud claim.

**1. Common Law Fraud**

The elements of common-law fraud are: "1) a false statement of material fact; 2) knowledge or belief by the maker that the statement was false; 3) an intent to induce reliance on the statement; 4) reasonable reliance upon the truth of the statement; and 5) damages resulting from that reliance." *Coexist Foundation, Inc. v. Fehrenbacher*, No. 11-CV-6279, 2014 WL 1287880 (N.D. Ill. Mar. 28, 2014).[2]

At a minimum, Defendants cannot state a claim to fraud because their own statement of facts indicates that no reliance actually occurred. When G&G's agent allegedly told Jaime that his "only option was to settle" and demanded $20,000, Jaime did not make any payments and instead insisted that G&G would have to "take him to court," which is in fact what happened. Defendants' theory of reliance is that, "when threatened with a lawsuit a potential defendant has no say in the matter, and therefore no means of avoiding reliance." (Defs.' Response at 6-7, ECF No. 21.) But this position makes no sense and does not explain how Defendants relied on any statement G&G made. Additionally, Defendants *did* have a say in the matter: by refusing to pay the settlement demand, Defendants left G&G with the option of filing suit or abandoning an attempt to collect the damages it alleges it is owed.

---

[2] An alternative recitation of the elements of common law fraud exists: "(1) a statement by defendant; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known or believed by the speaker to be untrue or made in culpable ignorance of its truth or falsity; (5) that was relied on by the plaintiff to his detriment; (6) made for the purpose of inducing reliance; and (7) such reliance led to the plaintiff's injury." *Chow v. Aegis Mortg. Corp.*, 185 F.Supp.2d 914, 917 (N.D. Ill. 2002). The court's analysis of the common law fraud claim is the same under either recitation of elements.

Because Defendants have not adequately alleged reliance — and indeed demonstrated non-reliance — their common law fraud counterclaim (Count I) is insufficiently pled and the motion to dismiss Count I is granted.[3]

**B. The Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") Counterclaim**

Count II of the counterclaims states that G&G's "tactics and actions constitute a deceptive act or practice under the [ICFA]." This claim is based on Defendants' allegation that G&G is using scare tactics, misrepresenting its legal rights, and exaggerating its potential legal damages when attempting to negotiate settlements with Defendants and others like them.

The ICFA "is construed liberally to effectuate its purpose." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574. The elements of a claim under the ICFA are: "(1) a deceptive act or unfair practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). "Unlike a claim for common law fraud . . . to state a claim under the ICFA, [a party] need not allege that [it] actually relied on [the] deceptive statements." *Ibarrola v. Kind, LLC*, No. 13-C-50377, 2014 WL 3509790 at *4 (N.D. Ill. July 14, 2014) (internal citations omitted).

The Seventh Circuit has held that when an ICFA claim is made on the basis of "unfair conduct" rather than "fraud," the heightened pleading requirement of Fed. R. Civ. P. 9(b) does not apply. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). The Seventh Circuit has applied a three-prong test to determine whether the "unfairness" prong is satisfied: "a defendant's conduct must

---

[3] Because Defendants have not pled reliance, the court need not resolve whether they have adequately alleged the other elements of their claim for common law fraud. The court also does not need to address the particularity requirements of Rule 9(b).

5

(1) violate public policy; (2) be so oppressive that the consumer has little choice but to submit; and (3) cause consumers substantial injury." *Siegel*, 612 F.3d at 935. Further, a "court may find unfairness even if the claim does not satisfy all three criteria." *Id*.

The court finds that Defendants have adequately alleged a claim under the ICFA because, under Defendants' theory, G&G's actions violate public policy and are intended to be oppressive.[4] The ICFA "provides redress not only for deceptive business practices, but also for business practices that, while not deceptive, are unfair." *Wigod*, 673 F.3d at 575. In Defendants' counterclaims, they allege that G&G is using "scare tactics . . . and exaggerating their [sic] potential legal damages when attempting to negotiate 'settlements' with Defendants and others like them." (Answer at 11, ¶ 14, ECF No. 15.) Defendants also allege that they received multiple "threatening" letters and that an attorney representing G&G "tried to convince [Jaime] Castillo that his only option was to settle and demanded a minimum of $20,000." (*Id*. at 9, ¶ 4.) The fact that Defendants did not in fact rely on this settlement demand is immaterial — a party does not need to plead reliance to adequately plead a claim under the ICFA. *See Ibarrola* at *4. The court believes that the repeated letters and admonition that Defendants had little option but to settle sufficiently alleges an "unfair practice" under the ICFA, particularly because the ICFA is "construed liberally." *Wigod*, 673 F.3d at 574. Whether the Defendants will eventually prevail on the merits of this counterclaim is a separate question not properly addressed in a ruling on a motion to dismiss.

---

[4] Defendants also argue that G&G misrepresents its legal rights because it cannot prevail under both statutes. The fact that G&G may not prevail under both statutes is axiomatic. *See Joe Hand Promotions, Inc. v. Lynch*, 822 F.Supp.2d 803, 805-806 (N.D. Ill. 2011). In fact, courts in this district have held that "any complaint asserting that a single action violates both statutes can only be interpreted as stating alternative claims." *Id*. Given that alternative pleading is permissible, the court will not construe G&G's assertions that it may be entitled to relief under either act as an actionable misrepresentation under the ICFA.

Because Defendants have adequately alleged a violation of the ICFA, G&G's motion to dismiss Count II is denied.

### C.  Leave to Amend

Defendants indicate in their response that they seek leave to amend their counterclaims. (Defs.' Resp. at 5, n. 10.) Defendants have not properly requested leave to amend under Fed. R. Civ. P. 15(a)(2). If Defendants wish to amend their pleadings, they must file a motion for leave to amend with the court.

### IV. Conclusion

For the reasons set forth in this Order, the court grants in part and denies in part G&G's motion to dismiss [16]. The motion to dismiss Count I is granted; the motion to dismiss Count II is denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:  March 5, 2015