UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| G&G Closed-Circuit Events, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-CV-02073 |
| | ) | |
| v. | ) | Judge Joan Gottschall |
| | ) | Magistrate Jeffrey Cole |
| Jaime F. Castillo, Maria A. Castillo and El Bajio | ) | |
| Enterprises, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| Jaime F. Castillo, Maria Castillo and El Bajio | ) |
| Enterprises, Inc., on behalf of themselves | ) |
| and others similarly situated, | ) |
| | ) |
| Counter-Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| G&G  Closed-Circuit Events, LLC, | ) |
| | ) |
| Counter-Defendant. | ) |

| | |
|---|---|
| Jaime F. Castillo, Maria Castillo and El Bajio | ) |
| Enterprises, Inc., on behalf of themselves | ) |
| and others similarly situated, | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DirecTV International, Inc. a Delaware Corporation; | ) |
| DIRECTV, LLC, a California LLC; and the DirecTV | ) |
| Group, Inc., a Delaware Corporation, | ) |
| | ) |
| Third-Party Defendants. | ) |

**COUNTER-PLAINTIFFS' AND THIRD-PARTY PLAINTIFF'S MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................2

SUPPORTING FACTS .........................................................................................................2

THE UNFAIR STANDARD BUSINESS PRACTICES .......................................................3

    INTENTIONAL IMPROPER INSTALLATIONS: DIRECTV ...................................3

    INVESTIGATOR/AUDITOR PRACTICES ...............................................................4

    ATTORNEY PRACTICES .........................................................................................5

    THE PROPOSED CLASS ..........................................................................................6

    ARUGMENT ...........................................................................................................10

        I.    Defendants Have Met the Prerequisites of Fed. R. Civ. P. 23(a) ...............11

            a.    Rule 23 (a)(1) – Numerosity ...........................................................12

            b.    Rule 23(a)(2) – Commonality ..........................................................14

            c.    Rule 23(a)(3) – Typicality ................................................................16

            d.    Rule 23(a)(4) – Adequacy ................................................................18

        II.    Defendants Have Met the Prerequisites of Fed. R. Civ. P. 23(b) ..............19

            a.    Predominance ...................................................................................19

            b.    Superiority .............................................................. ........21

CONCLUSION ....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ...................................................................19

*Beley v. City of Chicago*,

      No. 12 C 9714, 2015 U.S. Dist. LEXIS 163919 (N.D. Ill. Dec. 7, 2015) ...............13, 15, 20, 22

*Bell v. PNC Bank, N.A.* 800 F.3d 360 (7th Cir. 2015) ...........................................................15

*Brewer v. Friedman*, 152 F.R.D. 142 (N.D. Ill. 1993) .........................................................11

*Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D. Ill. 2008) .......................13

*Chandler v. Southwest Jeep Eagle*, 162 F.R.D. 302 (N.D. Ill. 1995) .................................14, 18, 19, 20

*Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D. Ill. 2000) ...........................................19, 20

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225 (7th Cir. 1983) ...........................................16

*Dickson v. Chicago Allied Warehouses, Inc.*,

      No. 90 C 6161, 1993 U.S. Dist. LEXIS 12914

      (N.D. Ill. Sept. 16, 1993)................................................................14, 16, 17, 19, 21, 22

*Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399 (N.D. Ill. 1996) ................ 16, 22

*Drive v. AppleIllinois, LLC*, 265 F.R.D. 293 (N.D. Ill. 2010) ...................................................21

*Federal Trade Comm'n v. Sperry & Hutchinson Col.*, 405 U.S. 233 (1972) .......................................12

*Gaspar v. Linvatec Corp.*, 167 F.R.D. 51 (N.D. Ill. 1996) ............................................... 13, 14

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) ..................................................................11

*Heastie v. Comm. Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) ......14, 15, 16, 18, 20, 21

*Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) ....................................13

*Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608 (N.D. Ill. 2007) ..........................................18

*La. Firefighters' Ret. Sys. v. Northern Trust Invs.*, N.A.,

       No. 09 C 7203, 2015 U.S. Dist. LEXIS 170281 (N.D. Ill. Dec. 15, 2015) ..........................11, 20

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012) .............20

*Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910 (7th Cir. 2003) ....................................................22

*Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802 (7th Cir. 2012) ...........................................11

*Mount v. LaSalle Bank Lake View*,

       No. 92 C 5645, 1994 U.S. Dist. LEXIS 4027 (N.D. Ill., April 1, 1994)..................11, 13, 14, 16

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015).....................................................................9

*Mussat v. Global Healthcare Res.*, LLC,

       No. 11 C 7035, 2013 U.S. Dist. LEXIS 35107 (N.D. Ill., March 13, 2013) ......................15, 19

*Phillips Petroleum v. Shutts,* 472 U.S. 797 (1985).................................................................................11

*Randolph v. Crown Asset Mgmt.*, LLC, 254 F.R.D. 513 (N.D. Ill. 2008) ................................14, 17, 19

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986) ........................................................................14

*Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (Ill. 2002) .....................................................12

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ...............................................................................18

*Sanchez v. Roka Akor Chicago, LLC*,

       No. 14 cv 4645, 2016 U.S. Dist. LEXIS 1542 (N.D. Ill., Jan. 7, 2016) ..............................15, 19

*Simpson v. Safeguard Props., LLC*,

       No. 13 CV 2453, 2015 U.S. Dist. LEXIS 59590 (N.D. Ill. May 7, 2015) ............................16, 17

*Subedi v. Merchant,* No. 9 C 4525, 2010 U.S. Dist. LEXIS 48190 (N.D. Ill. May 17, 2010) .......10, 18

*Subedi v. Merchant,* No. 9 C 4525, 2010 U.S. Dist. LEXIS 48190 (N.D. Ill. May 17, 2010) .......10, 18

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) .......................................................15, 16

*Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008)....................................................10

*Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 749 F. Supp. 869 (N.D. Ill. 1990) .................12

*Wal-Mart, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .......................................................11, 14, 16

*Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170 (N.D. Ill. 2015) ..............................................11, 15, 21

## Statutes

47 U.S.C. § 553 ...........................................................................................................3, 6, 7, 8, 9, 10

47 U.S.C. § 605 ...........................................................................................................3, 6, 7, 8, 9, 10

## Other Authorities/Citations

Fed. R. Civ. P. 23(a) ...........................................................................................................10, 11

Fed. R. Civ. P. 23(a)(1) ...........................................................................................................13, 14

Fed. R. Civ. P. 23(a)(2) ...........................................................................................................14

Fed. R. Civ. P. 23(a)(3) ...........................................................................................................16, 17

Fed. R. Civ. P. 23(a)(4) ...........................................................................................................18

Fed. R. Civ. P. 23(b)(3) ........................................................................................................... 11, 19, 21

iv

NOW COME Defendants/Counter-Plaintiffs and Third-Party Plaintiffs Jaime F. Castillo ("Jaime"), Maria A. Castillo ("Maria"), and El Bajio Enterprises, Inc. d/b/a La Pena, ("La Pena") and move this Honorable Court for an order certifying a class of similarly situated Illinois consumers who have suffered damages on account of the unfair business practices of Counter-Defendant G&G Closed-Circuit Events, LLC ("G&G") and Third-Party Defendant DirecTV. In support of this motion, Jaime, and Maria, on behalf of themselves and other Illinois consumers injured by these practices, state as follows:

**INTRODUCTION**

Plaintiff G&G claims to have certain licensing rights to various pay-per-view boxing events. G&G does little to nothing to advertise or protect those rights. Instead, G&G has created a cottage industry of entrapping consumers who unwittingly show these fights, and then threatening those consumers with exaggerated damages, unsupportable legal claims and time-consuming and expensive litigation. These suspect tactics force a vast majority of consumers into costly and legally questionable "settlements." G&G and its agents have made millions of dollars engaging in these unfair practices, aided by the equally questionable and unfair sales, marketing and installation practices of Third-Party Defendant DirecTV. The proposed class is intended to address these issues, and to obtain a remedy for the hundreds if not thousands of Illinois consumers who have been damaged by these practices.

**SUPPORTING FACTS**

April 20, 2013 was like most Saturday nights at La Pena, the Ecuadorian restaurant owned and operated by Jaime and Maria. The same band that has played every Saturday night since the restaurant opened, *Umbral*, performed a set between approximately 7:00 and 10:30

2

p.m., followed by a DJ. (Second Amended Class Action Counterclaim ("SAC" ¶ 15); Class Action

Third-Party Complaint Against DirecTV ("TPC" ¶ 33).) [1] The only out-of-the-ordinary event that

evening was an unfamiliar patron, now known to be investigator/auditor Aaron Lockner, asking

for "the fight" by telling Jaime which channel he wanted. (SAC ¶¶ 17, 18; TPC ¶¶ 35, 36.)

Although Jaime had never shown a boxing match in his establishment, he thought nothing of

the request until several months later, when he received threatening letters from the Law

Office of Thomas P. Riley, claiming to represent boxing promotion company G&G and

threatening hundreds of thousands of dollars in damages. (SAC ¶¶ 18, 20, 24; TPC ¶¶ 36, 45)

   When Jaime and Maria refused to pay the $20,000 Riley's agents demanded, this

litigation was filed, alleging violations of 47 U.S.C. §§ 553 and 605 and requesting $300,000.00

in damages. (SAC ¶¶ 42 – 46; TPC ¶ 45.) It is only now, after nearly two years of discovery and

investigation,mostly informal,[2] that Defendants can adequately describe the practices of G&G

and DirecTV, and define an ascertainable class.

### THE UNFAIR STANDARD BUSINESS PRATICES
### INTENTIONAL IMPROPER INSTALLATIONS: DIRECTV

**Unfair standard practice number one (as alleged in SAC ¶¶ 4, 21, 22; TPC ¶¶ 10 – 28):**

Jaime, like many minority small-business owners, obtained DirecTV programming from a third-

---

[1] Because the Second Amended Class Action Counterclaim is being filed as an Exhibit to
Defendants' Motion for Leave to File, no docket number is available at this time.

[2] Defendants' discovery requests have been met with stonewalling, obfuscation and countless
form objections. Counsel has drafted countless letters and filed four motions to compel. (See
Docket Nos. 49, 53, 61, 62, 64, 66, 67, 69, 70, 71, 72, 74, 75, 76, 77, 92, 93, 95, 96, 99, 101, 103,
105, 106, 107, 108, 113.) Despite Judge Cole's assistance with these discovery disputes, most of
Defendant's discovery has come in the form of in-person interviews with other victims,
discussions with other lawyers, and assistance from citizens concerned about the legality of
these practices.

party installer who solicited his business. (TPC ¶ 10.) The DirecTV representative's agent came to Jaime's business, hooked up all the necessary equipment, and set up the account. (TPC ¶ 12.) The DirecTV representative's agent was only provided access to the commercial establishment, and there is no possible way to confuse the restaurant for a residential dwelling. (TPC ¶ 13, 14.) The installer never mentioned a difference between "residential" and "commercial" programming and did not provide Jaime a contract or other document telling Jaime what type of programming he received. (TPC ¶¶ 12, 20.) Indeed, Jaime did not know, and had no reasons to suspect, that the DirecTV representative had created a residential and not a commercial account. (TPC ¶ 17.) Jaime did not learn that he had residential programming until well over a year after he was sued. (TPD ¶ 22.) Other consumers tell nearly identical stories. (TPC ¶ 17, fn. 1) (Declarations of victimized consumers attached as Group Exhibit 1.)

Not only are these practices violations of the Illinois Consumer Fraud and Deceptive Practices Act, as alleged in the Third-Party Complaint, they are in blatant violation of the Consent Decree DirecTV signed in 2010 with 48 Attorney Generals, including Illinois, outlining procedures for monitoring third-party installer practices. (TPC ¶ 50; Consent Decree, attached as Exhibit 2.)

## INVESTIGATOR/AUDITOR PRACTICES

On the night of any big fight, Attorney Thomas P. Riley, on behalf of his clients G&G, J&J Sports Productions ("J&J") and Joe Hand Promotions ("Joe Hand"),[3] sends hundreds, if not thousands of "investigators/auditors" out across the country to spy on restaurants and bars in

---

[3] If and when a class is certified, J&J and Joe Hand will be named as Defendants in the Counterclaim, as they undertake identical business practices to those described here.

hopes of trapping unsuspecting consumers showing the fight without a proper license.[4] (SAC ¶ 5; TPC ¶29.)

**Unfair standard practice number two (as alleged in SAC ¶¶ 6, 12 and TPC ¶¶ 30, 31):** Investigators/auditors for G&G are only paid if they "catch" an alleged pirate,[5] providing them an unfair incentive to lie and exaggerate in their affidavits and/or mislead unsuspecting consumers – an easy thing to do if an unsuspecting minority-owned business was outfitted with residential programming without their knowledge. (SAC, *id.*)

**Unfair standard practice number three (as alleged in SAC ¶¶ 7, 8):** Riley appears to do no real vetting of these "investigators/auditors," nor does he comply with his own claimed requirement that someone who does this work have private investigator bona fides.[6] (See Riley investigator hiring documents, Group Exhibit 4). (SAC, *id.*)

**Unfair standard practice number four (as alleged in SAC ¶¶ 7, 9 – 13):** All investigators/auditors sign a standardized affidavit and provide photos and/or video of their "hits" to Attorney Riley (See Riley standardized affidavit and 16 actual affidavits, Group Exhibit 5). (SAC ¶ 9.) These form affidavits have a line for an "investigator" signature, telephone number and agency, but the individuals, agencies and telephone numbers listed are often impossible to verify or contact. (SAC ¶10.) Many of the agencies have no investigator

---

[4] http://www.nbcchicago.com/investigations/Small-Businesses-Claim-Boxing-Industry-Picks-Unfair-Fight-Against-Minorities-345137172.html

[5] As one commentator states, auditing work means that you, "eat what you kill." See Investigator/Auditor pay information, Group Exhibit 3.

[6] Aaron Lockner, the investigator/auditor in this case, was arrested on two felony charges of criminal property damage in October of 2015. (See Group Exhibit 4.) It is unknown at this time whether he is still doing work for Riley or G&G, as he has evaded Defendants' subpoenas.

credentials in Illinois. (See Group Exhibit 4.) (SAC ¶ 7.) Many of these affidavits and videos do not meet the claimed requirements of Riley's own internal guidelines, and frequently contain substantial factual errors.[7] (SAC ¶ 11, 12.) The affidavits do not appear to be fact-checked or verified by Riley or the attorneys who eventually file these claims. (SAC ¶ 13.)

### ATTORNEY PRACTICES

**Unfair standard practice number five (as alleged in SAC ¶¶ 24 – 41)**: Riley then sends form letters to individuals in Illinois – a vast majority of whom appear to be minorities – claiming that they can be liable under § 553 and/or § 605 when in fact Illinois law does not authorize recovery under more than one statute.[8] (SAC ¶ 24.) Riley and his agents then attempt to extort settlements from consumers by claiming that they have "evidence" against them (in the form of these affidavits and video) but refusing to provide copies of their "evidence" to the consumers. (See Group Exhibit 6.) (SAC ¶33.) As to Riley's formulaic threats, his agents will describe the evidence to the consumers, and illicit admissions from them, relying on threats of "guilt" and legally questionable claims of individual liability. (SAC ¶ 28.) Riley's agents do no

[7] See Declarations of Rosana Mandile and Angelo Mandile and video (video taken outside of the establishment, violating Riley's internal requirement that video be taken inside the establishment); Declaration of Miguel Gonzalez and Isabela Gonzalez and video (video taken outside of the establishment, violating Riley's internal requirement that video be taken inside the establishment; video only seven seconds long and not of the fight in question); Declaration of Ananya Archaaudsawahkhul and affidavit (listing a legal occupancy of 150 for an establishment with a legal occupancy of 28, an exaggeration of 5.3x); Declaration of 8 Ball owners and video (video shows a basketball game, not a boxing match) ("Class Declarations" Group Exhibit 6).

[8] See Declarations of Rosana Mandile and Angelo Mandile with letter; Declarations of Miguel Gonzales and Isabel Gonzales and letters; Declaration of Ananya Archaaudsawahkul and letter; Declaration of Kevin Smith and letter; Castillo letters; Declaration of Marc Bragg and letter; Declaration of Rafael Hernandez and letter; Declaration of Armando Medina; Declaration of Larry Burnickas. (Group Exhibit 6.)

Rule 11 investigation into the legality of their purported claims. They do not ask the consumer whether they have satellite or cable – a tactical omission since the terms of § 605 offer larger enhanced damages and more favorable attorneys' fees language.[9] (SAC ¶ 31.) They make no inquiry into commercial gain or attempt to obtain any evidence to support their claims of enhanced damages. (SAC ¶¶ 32, 35.) Instead Riley and his agents threaten all consumers with exaggerated damages regardless of the facts. (See Group Exhibit 6.) (SAC ¶¶ 37, 40.) Riley's agents never suggest that consumers should consult an attorney, nor do they inform consumers of the existence of a provision in the statute that limits damages to $100 under § 553 and $250 under § 605 if the consumer "was not aware and had no reason to believe that his acts constituted a violation..." (47 U.S.C. § 553 (c)(3)(C)(iii); 47 U.S.C. § 605 (e)(3)(C)(iii)). (SAC ¶ 29, 30, 36.) A vast majority of the alleged violations result in settlements, many of them believed to be as high as $50,000.

**Unfair standard practice number six (as alleged in SAC ¶¶ 42 – 46):** If Riley's office is unsuccessful in obtaining a "settlement" the consumer is sued in federal court. Despite black letter law in Illinois that only authorizes damages under one statute or the other, Plaintiff G&G makes no factual inquiry into which statute applies, and requests damages of $300,000 in their pleadings and civil cover sheets.[10] (SAC ¶¶ 41 – 45.) G&G files the same complaint, relies on the

---

[9] As described in more detail below, even when Plaintiff and its agents are in possession of evidence to suggest that § 553 applies, they still pursue remedies under § 605, attempting to capitalize on its more favorable language.

[10] Civil Cover Sheets prior to the denial of the first Motion to Dismiss (Docket No. 27) requested $300,000; Civil Cover Sheets after that ruling now request $100,000 or leave the amount requested blank. (See civil cover sheets from 6/15/12 – 12/5/14 with demands of $300,000; civil cover sheets from 5/14/15 and 5/21/15 with demands of $100,000 or left blank; Group Exhibit 7.)

same bully tactics, and cites the same case law in every case, obfuscating any factual differences between and among defendants.[11] (SAC, *id*.) Plaintiff always asks for the same exaggerated statutory and enhanced damages, despite the fact that the statue contains a safe harbor and only authorizes enhanced damages upon a finding that the consumer/defendant acted "willfully **and** for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 553 (c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(ii). [12]

Perhaps most audacious is Plaintiff's default practices. Consumer Kevin Smith's case (14 cv 2955) is instructive. After speaking with one of Riley's agents, Smith obtained counsel who drafted a detailed letter outlining the finances of the night in question and suggesting that (1) the cover charge had been for a band, not the fight; and (2) gross receipts were under $1500. (See Aaron Clay Letter, part of Group Exhibit 9.) Despite this knowledge, G&G filed its form default judgment paperwork claiming that because Defendant had not answered the Court could find that the event was shown "willfully and for purposes of direct or indirect commercial advantage or private financial gain." (Smith Motion for Default, ¶ 10, Group Exhibit 9.) Plaintiff then, without statutory authority or citation, claimed that each television is a separate violation, (*Id*. ¶ 11) and requested, without reference to the information provided by Defendant, statutory damages of $8800 (the cost of the fight for an establishment of this size x 4). The only

---

[11] See complaints in cases 14 cv 7047; 14 cv. 7104; 14 cv 9791; 12 cv 4696; 10 cv 3460, Group Exhibit 8.

[12] Julie Lonstein, counsel who formerly represented J&J and Joe Hand, made it clear in her complaints that her claims under § 553 and § 605 were in the alternative. See Case No. 10 cv 3460 Complaint, ¶ 32, Group Exhibit 8. It is unknown why Lonstein, who still represents DirecTV for §§ 553 and 605 litigation, no longer represents these boxing promotion companies.

8

documents attached are the formulaic investigator affidavit, a rate sheet, affidavits of service and an attorney's affidavit of hours.[13]

The totality of these unfair practices, big picture? As one victim described it, "legalized extortion."[14]

## THE PROPOSED CLASS

"[C]lass definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). The Seventh Circuit has defined three scenarios that warrant class treatment. One is where, as here, "the defendant's liability can be determined on a class-wide basis, but aggregate damages cannot be established and there is no common method for determining individual damages." *Id.* at 671. Where, as here, damages cannot be individually determined along with liability, the Court should "bifurcate the case into a liability and a damages phase." *Id.*

Accordingly, Defendants propose the following liability classes:

*Hybrid Class: Any Illinois consumer/business owner who (1) ordered commercial programming from DirecTV, from January 2010 to the present, but was provided residential programming, and was (2) visited by an investigator hired by Plaintiff G&G's agent, the Law Firm of Thomas P. Riley, between January 2010 and the present; and (3) was subsequently contacted by G&G's Agent, the Law Firm of Thomas P. Riley, and threatened with litigation for alleged violation of 47 U.S.C. § 553 and/or § 605, or sued by Riley or another agent of G&G for alleged violation of 47 U.S.C. § 553 and/or § 605; and*

---

[13] Rarely will an affidavit allege that the investigator paid a cover charge. None of the 12 affidavits for this Fight reference a cover charge, and alleged payment of a cover charge is the only evidence ever provided to support a court's finding of the necessary commercial gain and willfulness to support enhanced damages. See Group Exhibit 9.

[14] http://www.nbcbayarea.com/investigations/Small-Business-Owners-Claim-Targets-of-Scheme-Involving-Pay-Per-View-Boxing--365960621.html

(4) suffered damages in the form of a pre-litigation monetary settlement, a post-litigation monetary settlement, a final judgment on the merits, or a default judgment.

Boxing Promotion Class: Any Illinois consumer who was (1) visited by an investigator hired by Plaintiff G&G's agent, the Law Firm of Thomas P. Riley, between January 2010 and the present; and (2) was subsequently contacted by G&G's agent, the Law Firm of Thomas P. Riley, and threatened with litigation for alleged violation of 47 U.S.C. § 553 and/or § 605, or sued by Riley or another legal agent of G&G for alleged violation of 47 U.S.C. § 553 and/or § 605; and (3) suffered damages in the form of a pre-litigation monetary settlement, a post-litigation monetary settlement, a final judgment on the merits, or a default judgment.

Under the proposed definitions, DirecTV and G&G will be jointly and severally liable for damages to the Hybrid class, and G&G will be solely responsible for damages to the boxing promotion class. Jaime Castillo is presented as the class representative for the Hybrid class, and any one of the individuals who have signed Declarations herein (Angelo Mandile, Isabela Gonzales, Kevin Smith, Armando Medina, etc.) is an appropriate representative of the Boxing Promotion Class.[15]

## ARGUMENT

### I.     Defendants Have Met the Prerequisites of Fed. R. Civ. P. 23(a).

Rule 23 is "an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated. [...] If every small claim had to be litigated separately, the vindication of small claims would be rare." *Subedi v. Merchant,* No. 9 C 4525, 2010 U.S. Dist. LEXIS 48190, at *4 – 5 (N.D. Ill. May 17, 2010) (*citing Thorogood v. Sears, Roebuck & Co.,* 547 F.3d 742, 744 (7th Cir. 2008)).  Class actions promote judicial economy, help avoid duplicative

---

[15] One key issue as to damages will be whether consumers who have signed "releases" settling claims with G&G can be members of the class, when Plaintiff will assert that these consumers have waived their rights to assert claims under the terms of those agreements. Counter-Plaintiffs will argue that those releases are void under both contract principles and the Illinois Consumer Fraud and Deceptive Practices Act on grounds of fraud, duress, and misrepresentation.

10

suits against the same defendant, and protect individuals who might not otherwise be able to assert their rights. *See generally, Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *Phillips Petroleum v. Shutts,* 472 U.S. 797, 808-809 (1985); *La. Firefighters' Ret. Sys. v. Northern Trust Invs.*, N.A., No. 09 C 7203, 2015 U.S. Dist. LEXIS 170281 at *29 (N.D. Ill. Dec. 15, 2015) (class certified where "requiring each class member to litigate an individual suit would waste both the parties' and the Court's resources and potentially give rise to inconsistent results); *Mount v. LaSalle Bank Lake View*, No. 92 C 5645, 1994 U.S. Dist. LEXIS 4027 at * 18-19 (N.D. Ill., April 1, 1994) ("Efficiency is served because a class action provides a large group of litigants an opportunity [they would not otherwise have] to adjudicate their common claims in a single lawsuit where the costs of discovery, motions and trial would dissuade many of them from asserting their rights.") (citing *Brewer v. Friedman*, 152 F.R.D. 142, 144, (N.D. Ill. 1993)).

Rule 23(a) requires two related analyses. First, the movant must satisfy the requirements of Rule 23(a), *i.e.* "numerosity, commonality, typicality, and adequacy of representation." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802 (7th Cir. 2012). Second, the movant must satisfy one of the requirements of Rule 23(b). Here, movants can comply with 23(b)(3), which requires that questions or law or fact common to class members predominate over any questions affecting only individual members, so that class action is the superior method of adjudication. Fed. R. Civ. P. 23(b)(3).

The class must "present proof that the requirements of Rule 23 are satisfied, and the court must engage in a 'rigorous analysis' and if, necessary, delve into 'the merits of the plaintiff's underlying claim'." *Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 182 (N.D. Ill. 2015), *citing Wal-mart, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011). As described above, Jaime, Maria

11

and countless other business owner/consumers in Illinois allege standard business practices

that harm hundreds if not thousands of consumers,[16] mostly minorities, in Illinois and

elsewhere. Jaime and the class members allege that Plaintiff and Third-Party Defendant's

actions are formulaic, standardized and calculated to threaten and intimidate. (SAC ¶¶ 66 – 72;

TPC ¶¶ 61 – 67.) Jaime and other class members are confident that the facts will establish a

claim of unfairness under the ICFDPA. Unfairness can be established where "(1) the practice

offends public policy;" (2) where it is "immoral, unethical, oppressive, or unscrupulous;" and (3)

where it "causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201

Ill. 2d 403, 417-18  (Ill. 2002) (*citing Federal Trade Comm'n v. Sperry & Hutchinson Col.*, 405 U.S.

233 (1972)).  All three prongs of the *Sperry* test need not be met. Rather, "a policy may be

unfair because of the degree to which it meets one of the criteria or because to a lesser extent

it meets all three." *Id*. at 418 (citation omitted).

In this case Jaime and other class members have alleged facts to support a finding of

unfairness under all three prongs. Plaintiff's and Third-Party Defendant's standardized business

practices offend public policy; are oppressive and unscrupulous, and likely unethical; and cause

substantial injury to consumers. For these reasons, the movants invite the suggested "rigorous

analysis" of the merits of their allegations as part of their motion. "Suits brought by victimized

consumers 'are especially well-suited to class treatment, because the vindication of consumer

rights regularly involves class actions on behalf of members 'whose individual claims would be

---

[16] The Illinois Consumer Fraud and Deceptive Practice Act authorizes "a private right of action to '*any person* who suffers damage as a result of a violation of this Act committed by *any other person*'." *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 749 F. Supp. 869, 877 (N.D. Ill. 1990) (citations omitted). Accordingly, "there is no obvious requirement on the face of the statute that a 'person' be a 'consumer' in order to have standing under the Act." *Id*.

too small to warrant litigation'." *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768, 779 (N.D. Ill. 2008). Defendants submit that their claims are appropriate for class treatment.

        a.     **Rule 23(a)(1) – Numerosity**

Plaintiff has provided the names of 51 defendant class members who have been sued by G&G since 2011. (Exhibit 10.) It is unknown at this time how many of those consumers were provided with residential programming by DirecTV, but in both classes, consumers named as defendants appear to represent a small percentage of the individuals who would meet the class definition, since most of these cases appear to settle pre-litigation, which means that both classes could easily number several hundred each. If the class includes, as it should, victims of J&J and Joe Hand, the class will rapidly expand into the hundreds, if not thousands. (Exhibit 11.)

The movants are "not required to allege the exact number or identity of the class members." *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008). Moreover, the court is entitled to make "common-sense assumptions" in determining numerosity, and may make reasonable inferences about the size and content of the proposed class. *Id.*; *see also Mount v. LaSalle Bank Lake View*, No. 92 C 5645, 1994 U.S. Dist. LEXIS 4027 at *20 (N.D. Ill. April 1, 1994) (certifying class with eight identified members prior to class discovery). Where, as here, over 50 class members who could be members of either class have already been identified, with significantly more easily identifiable through the limited class discovery requested shortly after this motion, numerosity has been met. *See Beley v. City of Chicago*, No. 12 C 9714, 2015 U.S. Dist. LEXIS 163919 at *8-9 (N.D. Ill. Dec. 7, 2015) (numerosity met where it was "reasonable for [the] Court to infer" a class of several hundred); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56

13

(N.D. Ill. 1996) (certification of 18-member ERISA class); *Riordan v. Smith Barney*, 113 F.R.D. 60,

62 (N.D. Ill. 1986) (29 class members in securities fraud class met numerosity); *Dickson v.*

*Chicago Allied Warehouses, Inc.,* No. 90 C 6161, 1993 U.S. Dist. LEXIS 12914 at * 8 (N.D. Ill. Sept.

16, 1993) (inability to determine which of 211 customers may have claims did not defeat

numerosity).

> ### b.     Rule 23(a)(2) – Commonality

This commonality prong of Rule 23(a) "requires a party seeking class certification to

prove that the class has common 'questions of law or fact'." *Wal-Mart Stores v. Dukes*, 131 S. Ct.

2541, 2551 (2011). The party must further establish that the class claims "depend upon a

common contention of such a nature that it is capable of classwide resolution--which means

that determination of its truth or falsity will resolve an issue that is *central to the validity of*

*each one of the claims in one stroke.*" *Id.*, *See also Randolph v. Crown Asset Mgmt., LLC.*, 254

F.R.D. 513, 518 (N.D. Ill. 2008) (finding commonality and certifying FDCPA and ICFDPA class

where the complaint was "based on Defendant's standardized conduct of allegedly filing

complaints without assignments, not being a licensed debt collector, and falsely representing

itself as a holder in due course"); *Chandler v. Southwest Jeep Eagle*, 162 F.R.D. 302, 308 (N.D. Ill.

1995) (certifying Consumer Fraud Act class where "the defendants have engaged in

standardized conduct toward members of the proposed class");  *Mount v. LaSalle Bank Lake*

*View*, 1994 Case No. 92 C 5645, U.S Dist. LEXIS 4027 at * 17-18 (N.D. Ill., April 1, 1994)

(certifying Truth in Lending Act class and holding that the "commonality requirement will

normally be satisfied by a showing of a common nucleus of operative facts, despite some

factual variation between class members"); *Heastie v. Comm. Bank of Greater Peoria*, 125 F.R.D.

14

669, 674-76 (N.D. Ill. 1989) (finding commonality for both Consumer Fraud Act and RICO

claims); *Sanchez v. Roka Akor Chicago, LLC,* No. 14 cv 4645, 2016 U.S. Dist. LEXIS 1542 at *8-10

(N.D. Ill., Jan. 7, 2016) (finding commonality among different classifications of employees in Fair

Labor Standard Act and Illinois Minimum Wage Law class); *Wilkins v. Just Energy Grp., Inc., 308

F.R.F. 170, 182-84 (N.D. Ill. March 13, 2015)* (certifying Illinois Minimum Wage Law class); *Bell v.

PNC Bank, N.A.* 800 F.3d 360, 374 (7th Cir. 2015) (emphasis added) (certifying class of employee

plaintiffs who alleged violations of the Fair Labor Standards Act and the Illinois Wage Payment

and Collection Act); *Mussat v. Global Healthcare Res.*, LLC, No. 11 C 7035, 2013 U.S. Dist. LEXIS

35107 at * 11-12 (N.D. Ill., March 13, 2013) (Telephone Consumer Protection Act class).

Jaime and the purported class members allege a pattern and practice of standardized

conduct. First, DirecTV's known practice of setting up (predominantly minority) small

businesses with residential instead of commercial programming. (SAC ¶ 4, 22; TPC ¶¶ 10 – 28.)

Second, Plaintiff and Third-Party Defendant's standardized practice of only paying

investigators/auditors for "hits," incentivizing them to exaggerate and/or lie. (SAC ¶¶ 6, 12; TPC

¶¶ 30, 31.) Third, Riley's failure to follow his own procedures in hiring and monitoring

investigators/auditors. (SAC ¶¶ 7, 8.) Fourth, the investigators/auditors' formulaic affidavits.

(SAC ¶¶ 7, 9 – 13.) Fifth, the form letters and form threats employed by the attorneys and their

agents. (SAC ¶¶ 24 – 41.) Lastly, the litigation tactics employed, if necessary, by Riley and/or

local counsel. (SAC ¶¶ 42 – 46.) There is ample evidence of "conduct common to members of

the class." *Beley v. City of Chicago*, No. 12 C 9714, 2015 U.S. Dist. LEXIS 163919 at * 8-9 (N.D. Ill.,

Dec. 7, 2015) (*citing Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

Plaintiff will no doubt point to differences between and among the class members. Admittedly, one person's affidavit may contain more exaggerations. There are minor differences between the letters, and likely some variation between and among the stories class members will tell about their conversations with Attorneys Riley and his agents. But "a class will not be defeated solely because of some factual variations among class members' grievances." *Heastie*, 125 F.R.D. 669 at 675. Rather, "[w]hat matters to class certification ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek*, 764 F.3d at 755-56 (*citing Wal-Mart*, 131 S. Ct. at 2551). Classwide determination as to the alleged unfairness of Plaintiff's and Third-Party Defendant's standardized business practices will do exactly that. Commonality has been met.

### c.    Rule 23(a)(3) – Typicality

Typicality requires that members of the proposed class were "subject to the same allegedly unlawful practices." *Demitropoulous v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1418 (N.D. Ill. 1996) (*citing De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). A class representative's claim is typical "if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and the claims are based on the same legal theory." *Mount v. LaSalle Bank Lake View*, No. 92 C 5645, 1994 U.S. Dist. LEXIS 4027, at * 21, 24 (N.D. Ill., April 1, 1994) (class certified even where defendants alleged that fraud claims would require individualized assessment of reliance); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755-56 (7th Cir. 2014) (certifying class of outside salespersons alleging violation of the Illinois Minimum Wage Law); *Simpson v. Safeguard Props., LLC*, No. 13 CV 2453, 2015 U.S. Dist. LEXIS 59590 at * 6 (N.D. Ill. May 7, 2015) (certifying FDCPA claims); *Dickson v.*

16

*Chicago Allied Warehouses, Inc.*, No. 90 C 6161 1993 U.S. Dist. LEXIS 12914 at * 10 (N.D. Ill.,
Sept. 16, 1993) (certifying RICO and Consumer Fraud Act classes).

Jaime and these purported class members allege that they were subjected to the same
investigator practices (SAC ¶¶ 6 – 8, 12; TPC 30, 31); that those investigators/auditors use the
same form affidavits (SAC ¶¶ 7, 9 – 13); that Plaintiff's agent Riley sends the same letters and
employs the same scare tactics (refusing to provide copies of evidence, exaggerating damages
and threatening personal liability, among others) (SAC ¶¶ 24 – 41); and that Plaintiff's agent
Riley and other local attorneys utilize unfair and improper tactics in litigation, particularly in
obtaining default judgments (SAC ¶¶ 42 – 46). This is sufficient for a finding that these
defendants were all subject to "the same event, practice, or course of conduct." Plaintiff and
Third-Party Defendant may attempt to destroy certification by pointing to the minor factual
discrepancies inherent in these claims, or by suggesting that typicality can be destroyed by the
existence of consumer defendants who may have violated Plaintiff's licensing rights, but these
efforts must be ignored. Even the "guilty" cannot destroy typicality because all consumers, both
liable and not liable, have been subjected to sufficiently typical practices.

"Rule 23(a)(3) does not require that all class members suffer the same injury as the
named class representative." *Dickson,* 1993 U.S. Dist. LEXIS 12914 at * 11 (citations omitted).
"Rather, the court looks to the defendant's conduct and the plaintiff's legal theory to satisfy the
rule." *Id.*; *see also Randolph v. Crown Asset Mgmt.*, LLC, 254 F.R.D. 513, 518 (N.D. Ill. 2008)
(typicality "should be determined with reference to [Defendant's] actions, not with respect to
particularized defenses it might have against certain class members"); *Simpson*, 2015 U.S. Dist.
LEXIS 59590 at * 7 (Defendant's attempt to "downplay the uniformity of its conduct and

17

magnify the class members' individual circumstances..." did not frustrate certification of class).

Where, as here, "all parties essentially have the same cause of action," (*Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608, 615 (N.D. Ill. 2007)) *i.e.* claims that the standardized business practices of Plaintiff and Third-Party Defendant are unfair under Illinois's Consumer Fraud and Deceptive Practices Act, "[m]inor factual discrepancies aside, all putative class members have 'the same essential characteristics,' and therefore typicality has been established." *Id.; see also Subedi v. Merchant*, No. 09 C 4525, 2010 U.S. Dist. LEXIS 48190 at 4-5 (N.D. Ill. May 17, 2010) (same) (citations omitted); *Heastie v. Community Bank of Greater Peoria*, N.D. Ill. 125 F.R.D. 669, 675 (N.D. Ill. 1989) (same) (citations omitted).

### d. Rule 23(a)(4) – Adequacy

Adequacy requires three things: One, "the chosen class representative cannot have antagonistic or conflicting claims with other members of the class." *Chandler v. Southwest Jeep-Eagle*, 162 F.R.D. 302, 309 (N.D. Ill. 1995) (*citing Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Two, "the named representative must have a 'sufficient interest in the outcome to ensure vigorous advocacy'." *Id.* (citations omitted). Three, "counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Id.*

Jaime, the yet-to-be-named representative of the Boxing Promotion Class and the undersigned meet the stated requirements. Because the classes have been defined to address potential differences in defenses, the class representatives' claims do not conflict with any other class members' claims. Jaime and Maria are very involved in this matter and have vigorously advocated for their own position and that of other class members. The undersigned

18

has established her ability to vigorously advocate for this class. She has invested hundreds of

unpaid hours in the investigation of these claims and has advocated for these class members in

this highly contentious litigation, in addition to her prior general litigation and class action

experience (See Declaration of Attorney Lisa L. Clay, Exhibit 12). Where the court can make

these findings, adequacy has been established. *See Mussat v. Global Healthcare Res. LLC*, No. 11

C 7035, 2013 U.S. Dist LEXIS 35107 at * 13 (no dispute as to adequacy of counsel or class

representative); *Sanchez v. Roka Akor Chicago, LLC*, No. 14 cv 4645, 2016 U.S. Dist. LEXIS 1542

at * 11-12 (N.D. Ill. Feb. 7, 2016 (adequacy met with showing of "named plaintiff's ability to

adequately represent the interest of the class members [and] no reason to doubt that plaintiffs'

counsel will fail to represent the interests of the class members").

## II.   Defendants Have Met the Prerequisites of Fed. R. Civ. P. 23(b)(3)

### a.  Predominance

The question of predominance requires an analysis of "whether the proposed classes

are sufficiently cohesive to warrant adjudications by representation." *Christakos v. Intercounty

Title Co.*, 196 F.R.D. 496, 501 (N.D. Ill. 2000) (*citing Amchem Prods. v. Windsor*, 521 U.S. 591 at

623 (1997)). "[R]esolution of the predominance question tends to focus on the form trial on the

issues would take, with consideration of whether the action would be manageable…" *Chandler

v. Southwest Jeep Eagle*, 162 F.R.D. 302, 310 (N.D. Ill. 1995); *Dickson v. Chicago Allied

Warehouses, Inc.*, No. 90 C 6161, 1993 U.S. Dist. LEXIS 12914 at * 14 (N.D. Ill. Sept. 16, 1993)

(same); *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 519 (N.D. Ill. 2008) ("there is a big

difference from the standpoint of manageability between the liability and remedy phases of a

class litigation … (citation omitted) … class certification should not be denied "on the sole basis

of damages issues."). A trial with regard to liability under the Illinois Consumer Fraud and Deceptive Practices Act is by far the most direct and economic means of addressing hundreds, if not thousands, of individual consumers' claims of unfairness.

Issues of specific or varying defenses do not preclude class certification, especially where the class definitions have been carefully defined to provide all class members with the separate defenses shared with their own representative. "Consumer Fraud Act claims lend themselves readily to the finding that a common issue predominates over individual issues..." where, as here, the allegations address standardized business practices, including standardized forms. *Chandler v. Southwest Jeep Eagle*, 162 F.R.D. 302, 310 (N.D. Ill. 1995).

Where class issues of unfairness "predominate over any individual issues" or particular defenses, predominance has been met. *Christakos*, 196 F.R.D. at 501; *La. Firefighters' Ret. Sys. v. Northern Trust Invs., N.A.*, No. 9 C 7203, 2015 U.S. Dist. LEXIS 170281 at *29 (N.D. Ill., Dec. 21, 2015) (predominance found despite existence of numerous defenses that defendant claims would require independent analysis of each class member's claim); *Beley v. City of Chicago*, No. 12 C 9714, U.S. Dist. LEXIS 163919 at *8-9 (N.D. Ill. Dec. 7, 2015) ("Plaintiffs' claims turn on the uniform manner in which the Chicago Police Department purportedly refused to register homeless sex offenders regardless of their individual circumstances..."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (even though "[e]ach class member [in racial discrimination case] would have to prove that his compensation had been adversely affected by the corporate policies, and by how much... [necessitating] hundreds of separate trials... Rule 23(c)(4) provides that 'when appropriate, an action may be brought or maintained as a class action with respect to particular issues"); *Heastie v. Community Bank of*

*Greater Peoria*, N.D. Ill. 125 F.R.D. 669, 679 (N.D. Ill. 1989) (certifying class over objection that a determination of damages "will entail individual factual questions"). Where hundreds if not thousands of Illinois consumers allege injury at the hands of the same actors, and those actors utilize the same standardized practices, "[i]ndividual questions of injury may be resolved after the determination of the common questions." *Dickson v. Chicago Allied Warehouses, Inc.*, 1993 U.S. Dist. LEXIS 12914, at * 22. Predominance has been established.

### b. Superiority

The final hurdle to class certification is a finding that the class action mechanism is superior to other methods of resolution. *See* Fed. R. Civ. P. 23(b)(3). The Court must consider four factors:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation on the claims in the particular forum; and (4) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D)

Superiority is met where, as here, the "class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 190 (N.D. Ill. 2015) (*citing Drive v. AppleIllinois, LLC*, 265 F.R.D. 293, 304 (N.D. Ill. 2010).

In determining whether the class mechanism is superior, the court must weigh whether "the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a

21

single judge or jury." *Beley v. City of Chicago*, No. 12 C 9714, 2015 U.S. Dist. LEXIS 163919 at *

17 (N.D. Ill. Dec. 7, 2015) (*citing Mejdrech v. Met-Coil Systems Corp*., 319 F.3d 910, 911 (7th Cir.

2003)). Even though questions of individual damages may require further proceedings, where,

as here, "[t]he existence of unfair or deceptive practices is clearly a question common to the

class," (Dickson v. Chicago Allied Warehouses, Inc., No. 90 C 6161, 1993 U.S. Dist. LEXIS 12914

at *23 (N.D. Ill. Sept. 16, 1993)) the class mechanism is superior, particularly since "most of the

proposed class members are individual consumers who are probably unaware of their right

[and a] class action would ensure that their rights are protected." *Demitropoulos v. Bank One*

*Milwaukee, N.A.* 915 F. Supp. 1399, 1419 (N.D. Ill. 1996). For all of these reasons, these class

representatives have established that class treatment as to liability of these parties is a superior

means of addressing their Illinois Consumer Fraud and Deceptive Practices Act claims of

unfairness.

## CONCLUSION

Plaintiff G&G and Third-Party Defendant DirecTV have engaged in, and continue to

engage in unfair practices that harm hundreds, if not thousands, of Illinois consumers each year.

The class action mechanism envisioned in Rule 23 is intended to give voice and power in

numbers to those who independently lack the knowledge and/or means to address their

grievances. Failure to certify this class of victimized Illinois consumers will allow these unfair

practices to go unchecked, depriving these consumers of a day in court they desperately need.

**WHEREFORE**, Jaime and Maria Castillo, on behalf of the classes outlined above, respectfully request that this Court enter an order:

    (a)    Granting this motion for class certification, and certifying the Hybrid class and the Boxing Promotion class;

    (b)    Appointing Jaime class representative for the Hybrid class;

    (c)    Granting Class Counsel 15 days after certification to recommend a class representative for the Boxing Promotion class;

    (d)    Appointing the undersigned as counsel for the named classes;

    (e)    Any and all other relief the Court deems just and reasonable.

Date:  March 1, 2016            Respectfully submitted,

                                 /s/   Lisa L. Clay
                            Lisa L. Clay, Attorney at Law
                            345 North Canal Street, Suite C202
                            Chicago, IL 60606
                            Phone: 312.753.5302
                            lclayaal@gmail.com
                            ARDC # 6277257