**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **G & G CLOSED CIRCUIT EVENTS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 14 C 2073** |
| | ) | |
| | ) | **Judge Joan Gottschall** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| **JAMES F. CASTILLO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, G&G Closed Circuit Events, LLC ("G&G"), has filed a motion to exclude well over sixty witnesses first revealed by the defendants, Jaime and Maria Castillo, on February 8, 2016, just three weeks before the close of discovery. Although this supplementation of the Castillos' initial disclosures was made before the discovery deadline, given its massive scope, it was clearly late and prejudicial, as well – for the most part. As a result, G&G's motion must be granted, but not as to the ten witnesses that G&G was given extra time to depose.

## I.

## BACKGROUND

"A guy walks into a bar" is the hackneyed opening to countless jokes, but that's how this case began and, over the last two years, it has been anything but funny. A guy did walk into a bar/restaurant and asked the proprietor to put a boxing match on the televison. Since then, things have escalated to what might be described as epic proportions, with that proprietor and his attorney attempting to fashion what they seem to hope will be a nationwide, class-action conspiracy case. Whether there may be the makings of such a case is open to question, but as things proceed, it

becomes clearer and clearer that they – or at least, counsel – may be trying to punch well above their weight class.

On April 20, 2013, Austin Trout and Saul "Canelo" Alvarez were fighting for the WBA and WBC light middleweight titles. The plaintiff, G&G, a commercial distributor of sporting events, had purchased the exclusive nationwide television distribution rights to the bout. G&G, in turn, sublicensed the right to show the fight publicly to businesses like hotels and taverns. It claims that the defendants in this case, Jaime and Maria Castillo, showed the telecast of the fight to their patrons at their restaurant on the northwest side of Chicago without authorization. G&G brought suit against the defendants under the Communications Act, 47 U.S.C. §605, and the Cable & Television Consumer Protection Act, 47 U.S.C. §553, on March 25, 2014. It asked for statutory damages in the neighborhood of $300,000.

The defendants responded with a counterclaim against G&G [Dkt. #15], charging G&G with common law fraud and violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA"), 815 ILCS 505/1 *et seq*. The counterclaim alleged that G&G has been filing a number of these cases and seemed to be targeting small businesses whose owners may not speak English as their native language. In the case of the Castilllos, the counterclaim alleges that an attorney working for G&G sent Jaime Castillo a letter charging him with unauthorized distribution of the telecast of the boxing match. Mr. Castillo called the attorney's office a couple of times and finally got an appointment, at which time the attorney said he knew he was guilty and he should settle, demanding $20,000. Mr. Castillo said they would have to go to court, and here they are.

G&G quickly filed a motion to dismiss the counterclaim. On March 5, 2015, the District Court Judge ruled that the Castillos' counterclaim failed to adequately allege a claim for common

law fraud – they hadn't pled reliance – but allowed their claim under the ICFDTPA to stand. [Dkt. #27, 28]. A week after the District Court Judge's ruling, the Castillos sought leave to file a first amended counterclaim, along with a motion to certify a class. [Dkt. #30, 31]. When the motions were before the District Court Judge, the Castillos withdrew the first amended class counterclaim, indicating that they would be filing a motion for leave to file a second amended counterclaim. The District Court Judge gave them until April 7, 2015 to do that. Acknowledging the motion to certify a class, the Judge said that:

> [c]onsideration of the motion would be premature as this time. Accordingly, the court asks that the parties consider entering into a stipulation that would obviate the need to address the premature motion for class certification, while also addressing the mootness concerns raised in *Damasco* [*v. Clearwire Corp*., 662 F.3d 891, 897 (7th Cir. 2011)].

[Dkt. # 34]. The deadline for the Castillos to file a second amended counterclaim passed with the Castillos doing nothing, and the Judge gave G&G until April 29, 2015, to answer Count II of the counterclaim, which it did. [Dkt. #35, 36].

On May 13, 2015, the parties informed the District Court Judge they were unable to reach the class certification/*Damasco* stipulation she desired. As such, she denied the Castillos' motion for class certification without prejudice, "with the understanding that the counter-plaintiff's request for class certification remains pending as a placeholder and no rights are waived." [Dkt. #38]. The Judge referred the matter to me for discovery supervision and any settlement conference. [Dkt. #38].

On June 9, 2015, the parties filed an agreed proposed scheduling order, in which they set a deadline for the close of fact discovery: October 1, 2015. The parties would submit their Fed.R.Civ.P. 26(a)(1) disclosures by June 30, 2015, and would amend pleadings on or before September 1, 2015. [Dkt. #44].

The Castillos filed a motion for leave to file a first amended class action counterclaim on July 15, 2015. The District Court Judge granted that motion and set a briefing schedule for G&G's motion to dismiss, which was in the offing. [Dkt. #47]. Once the Castillos filed their class action counterclaim, the parties appeared before me and reported that they had suspended all discovery pending the Judge's resolution of G&G 's motion to dismiss. [Dkt. #49]. The motion to dismiss hadn't even been filed, let alone briefed. So the parties seemed to have planned among themselves a little vacation from discovery that would last for months. I allowed discovery deadlines to be stricken with the idea that new dates would be set after the District Court Judge ruled. But, by no means would the parties be allowed to take their extended holiday from this case – discovery would proceed. [Dkt. #49]. G&G then filed its motion to dismiss on August 19, 2016. [Dkt. #50].

When the parties were before me on September 15, 2015, it was clear discovery wasn't going well. Each side had multiple issues with the other side's participation, and after resolving a number of those, I reminded the parties that there were consequences for unjustified non-compliance. [Dkt. # 53]. The problems continued, including issues with compliance with the Castillos' third-party subpoenas. [Dkt. #62, 64]. When the parties were before me on November 2, 2015, things hadn't improved much. It was clear that the lack of any deadline wasn't helping matters. An endless horizon does not inspire pragmatism – or, it seemed, cooperation. Accordingly, I asked to parties to select a new discovery deadline. They balked, and finally G&G's counsel suggested March 1, 2016. The Castillos' counsel said she was "fine" with entering that date. Given her insouciance, I warned her that, come that time, she should not assume it would simply be extended. And so, March 1, 2016, was written in stone – or at least, written. [Dkt. #61].

Then, the Castillos filed a motion to compel G&G's response to interrogatories and for

sanctions. [Dkt. #66]. At the hearing on that motion, it became all the more apparent that the parties were not complying in good faith with Local Rule 37.2. The Castillos' Local Rule 37.2 certification referred only to "efforts and . . . letters and emails" [Dkt. #67, at 11-12], although counsel did assert that she tried to contact opposing counsel by phone and was brushed off. [Dkt. #67, at 5]. Unable to get an accurate picture of what happened, I ordered the parties "to have an immediate face-to-face Rule 37.2 conference and provide a joint certification of their efforts . . . [which had to] comply with the procedure set forth in *Autotech Tech. Ltd. Partnership v. Automationdirect.Com, Inc.*, 2007 WL 2713352, at *4 (N.D.Ill. 2007)." [Dkt. #69]. The next day, the Castillos filed an amended motion to compel compliance with their discovery requests. [Dkt. #70].

According to the parties' certification, in just about an hour, they were able to resolve a number of differences. Clearly in the time that went by before they had been ordered to meet and confer they had, at best, only gone through the motions. A number of petty items – such as correcting address and contact information for certain third parties – were finally taken care of. [Dkt. # 72]. The fact that repeated court intervention was required before counsel for plaintiff could provide correct contact information goes a long way to demonstrate that any prior Rule 37 meet-and-confers between the parties were not undertaken in good faith. On December 2, 2015, I conducted an extensive "settlement conference" in my chambers and resolved the remaining disputes. [Dkt. #75]. After dealing with the stances of both sides in these disputes – each leaving something to be desired – I determined that an award of fees was not appropriate because fault could not be apportioned without additional, protracted proceedings and denied the Castillos' motion for an award of fees. [Dkt. # 76].

In the interim, on December 1st, the District Court Judge denied G&G's motion to dismiss

the Castillos' first amended counterclaim. [Dkt. #73]. Along the way, the Judge noted that she had denied the Castillos' motion to certify a class without prejudice with the understanding that it remained a placeholder under *Damasco,* and acknowledged that *Damasco* had since been overruled in *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) to the extent that it held that a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy. [Dkt. # 73, at 2, n.1].

Into the new year, there followed motions to quash the Castillos' non-party subpoenas from Signal Auditing, Thomas Riley, and Jackie Cortez. [Dkt. #80, 88, 92]. Responses from the Castillos and subsequent replies from the non-parties were filed through January 27, 2016. [Dkt. #95-105]. I conducted hearings on these matters on January 28th and 29th.[1] I concluded that the Castillos' demand for 4 years' worth of information from the non-parties was too much. The parties – once again, belatedly, given that the subpoena had issued December 3, 2016 [Dkt. #93, at 1-2] – reached an agreement on the subpoenas to Mr. Riley and Mr. Cortez, paring down the scope of the information the Castillos had demanded. On January 29, 2016, I denied the Castillos' motion to compel compliance by Signal Auditing, finding that the information sought was irrelevant given the parameters of the case. I granted the Castillos' "oral motion to extend discovery in order to complete

---

[1] The hearing, then, was held *immediately* after briefing on the matter concluded. For some reason, the Castillos' attorney claims that a ruling on these matters was delayed due to my "nearly month-long absence in December 2015 and January 2016." [Dkt. # 133, at 4]. In reality, I was out of the country from January 6 to January 20, 2016, or for fifteen days. Moreover, the initial motion to quash was filed on December 4, 2015, and noticed for hearing December 23, 2015, before the District Court Judge [Dkt. #83, 86], who set a briefing schedule for the motion on December 22nd. [Dkt. #87]. The first motion to quash to come before me was not filed until January 7th [Dkt. #92], and not noticed for a hearing until January 28, 2016 [Dkt. #94]; not during December as erroneously suggested by the Castillos' counsel. [Dkt. 133, at 4]. The real question is why, if the parties engaged in Local Rule 37.2 talks in good faith, it took them nearly two months to "settle" their differences and, even at that, required court intervention.

the depositions of defendant Castillo and Julie Dadayan, Aaron Lockner, Biala and the California

investigators who were hired by Mr. Riley to work the night of the boxing match that is the subject

of this case...." The deadline for those depositions was April 15, 2016. As for all other discovery,

the deadline of March 1, 2016, stood. [Dkt. #106-107].

On February 8, 2016, the Castillos issued amended Rule 26(a)(1) disclosures in which they

named 62 witnesses in addition to the original six they named in their initial disclosures. [Dkt. #

114-2]. Not surprisingly, this shocked G&G. Moreover, many of these individuals were described

as having "experience with boxing promotion and its agents" which, given what the case is about

and the requirements of Fed.R.Civ.P. 26(a)(1)(A)(i), was rather cryptic and uninformative to say the

least. One might have expected an immediate response from G&G attacking the propriety of such

a massive supplementation so close to the end of discovery, but that's not what happened next.

On February 22, 2018, the parties filed an agreed order modifying the terms of the January

29 scheduling order. Under its terms, G&G had:

> until April 15, 2016 to complete the depositions of Jaime and Maria Castillo and the
> noticed depositions of La Pena employees.
> [The Castillos] are given until April 15, 2016 to take the depositions of
> Plaintiff-representative Nicholas Gagliardi, non-parties Thomas Riley, Jackie Cortez
> and investigators Larry Biela and Aaron Lockner. [The Castillos] may notice the
> depositions of additional current or former employees of Attorney Thomas Riley's
> office employed during the calendar year 2013, and [G&G] reserves the right to
> object to the depositions in whole or in part. [The Castillos] may notice the
> depositions of any Illinois investigator who performed work in Illinois for the Trout
> v. Alvarez fight on April 20, 2013, and [G&G] reserves the right to object to the
> depositions in whole or in part.
> Both parties reserve the right to request an additional extension of fact
> discovery to request written discovery and/or depositions of parties named in [the
> Castillos] Amended Rule 26(a) disclosures.

[Dkt. # 113]. The Amended disclosures were not attached to the filing, and nowhere in the

document was the court given the slightest inkling that the Castillos amended disclosures had added

over 60 witnesses. Indeed, the agreed order did little to modify the January 29th minute order, as the additional, specified depositions were still to be taken by April 15th and the deadline for the rest of discovery was unchanged; it remained March 1st.

The court was not informed of the incredibly massive scope of the Castillos' amended disclosures until the day discovery closed, March 1st, when G&G filed a ten-paragraph motion to extend discovery. [Dkt. #114]. The only thing G&G's counsel claims to have done in the interim was to have a brief phone conversation with the Castillos' attorney on February 11th, during which she said she didn't know whether she would call any of these witnesses at trial. [Dkt. #114, at ¶5]. So, it's not clear why G&G waited until the day discovery closed to seek an extension.

That same day, March 1st, the Castillos sought leave to file a second amended class action counterclaim, a third-party complaint against DirecTV[2], and a motion to certify a class. [Dkt. #116-118]. The District Court Judge allowed the two complaints, and set a briefing schedule for the motion to certify a class. [Dkt. #126]. Then, on March 2nd, the Castillos did G&G one better: they filed a motion to extend discovery when discovery had closed the day before [Dkt. #121], that was noticed to be heard over a week *after* the discovery deadline. [Dkt. #122]. Like G&G's motion, the Castillos' motion gave no indication as to why it was filed late. A week later, in court, Castillos' counsel could only say that she was "one person and I have to do this on my own." [Dkt. #143, at 11]. But, counsel failed to grasp the fact that there was a March 1st deadline, and that a motion for an extension of that deadline could easily have been filed by a sole practitioner *before the deadline*

---

[2] Essentially, the Castillos contend that DirecTV was in on this nationwide scam with G&G, directing its subcontractor-installers to outfit small businesses with residential, as opposed to commercial, licenses unbeknownst to the small business owners. Then, when the small businesses were caught showing programming to their patrons – for which they would have needed a commercial package – they were "busted."

*expired*. The 11th-hour tactics employed by both sides presuppose that a Judge will simply do whatever the parties wish.

I pointed out these problems in an order entered March 3, 2016, and ordered that the Castillos "be prepared to amend their recent Rule 26(a)(1) disclosures to provide a meaningful supplementation so that [G&G] can make an informed decision which, if any, of the 62 newly disclosed individuals they may want to depose." [Dkt. #123]. On March 7th, the Castillos provided G&G with their amended supplemental witness disclosures. There were now over 100 named witnesses, and a number of witnesses whose names and contact information were said to be unknown. [Dkt. #147-2, at 4-19]. In a cover letter, the Castillos' attorney informed G&G's that, at that time, 25 of these individuals were potential trial witnesses. [Dkt. #147-2, at 1].

When the parties came before me on March 9th, I denied their motions for an extension of time to complete discovery – actually, the Castillos' motion was seeking to reopen discovery – but added that:

> the parties are given to 4/14/2016 to complete the additional 10 depositions (in addition to the depositions outlined in the 1/29/2016 & 2/1/2016 orders) outlined in open court subject to a motion to bar one or more of those depositions. The parties are advised that this is a final extension and no further depositions will be allowed in this case, subject of course to any expansion of the contours of the case by Judge Gottschall. All questioning shall be limited to the facts relevant to this case in its present non-class form.

[Dkt. #131]. Notably, at the hearing on the motion, I reminded the parties that they were free to proceed with whatever discovery they agreed to on their own; they simply would not be able to run to court for repeated refereeing of their frequent bouts in the period after April 14, 2016, unless and until the District Court Judge determined whether this case would proceed as a class action. [Dkt. #143, at 14]. That, of course, would require a level of cooperation that they had not yet

demonstrated, so it was likely small consolation to the combatants.

The upshot of all this ought to have been clear, if not from the order, which excluded class discovery from the mix, then from exchanges during the hearing. Class discovery was not being foreclosed categorically in perpetuity, but it was not yet a claim or defense. As I explained to counsel for the Castillos, if she got class certification, discovery might be reopened. [Dkt. #143, at 29]. I then further assured counsel:

> MS. CLAY: And so I'm going to need your assistance reminding them that if a class is certified, they will need to produce those –
>
> THE COURT: If they --
>
> MS. CLAY: -- deponents again.
>
> THE COURT: -- insist on the depositions going forward in this case as it presently stands –
>
> MS. CLAY: Uh-huh.
>
> THE COURT: -- that's fine. They'll take the consequences. The transcript -- the case gets expanded. Now the claims are -- are different than they were.

[Dkt. #143, at 37].

On March 18th, the Castillos filed an objection to this order, which is pending before the District Court Judge. [Dkt. #132]. They asked the Judge to enter a new discovery order giving G&G 30 days to respond to previously-served class discovery, and to stay all other discovery "pending the inclusion or dismissal of DirecTV." [Dkt. #132, at 3].

On April 11th, G&G filed its motion to exclude witnesses under Fed.R.Civ.P 37(c)(1). The motion targeted all of the witnesses listed in the Castillos' tardy, amended supplemental disclosures aside from:

(1) Jaime Castillo, (2) Maria Castillo, (3) Maribel Huayamave, (4) Jaime Bravo, (5)

10

Hernan Aucky, (7) Byron Vaca, (8)William Marcelo Cuji, (13) Aaron Lockner, (14) Larry Biela, (15) Allan Schwartz, (16) Antoine Mitchell, Bobby E. Loy, Dan Shuler, Guy LoPresti, Hector Moreno, Johny Guerra, Jose Montoya, Kevin Footes, Kostantinos Katsaros, Latasha Jones, Luke Lifonti, Martin Popiolek, Michael Smalley, Myriam Perez, Tom O'Shea, (17) Dee Garza, (18) Jonathan Stoltze, (19) Jose Martinez, (20 Loren E. Engstrom, Margaret Neylon, Pete Scurto, (21) Mark Montgomery, (22) Run Dulm, (23) Wendy Espitia, (67) Julie Dadayan, (68) Thomas Riley, (69) Jackie Cortez, (74) Nicolas Gagliardi, (76) Every Illinois consumer contacted by Lonstein Law Offices or one of its agents in their capacity as counsel for DirecTV with regard to threatened or actual §553 and/or §605 claims, (77) Every Illinois consumer contacted by Thomas P. Riley or one of his agents with regard to threatened or actual §553 and/or §605 on behalf of their clients G&G, J&J and/or Joe Hand.

[Dkt. #147-2, at 3]. The motion addresses only "procedural deficiencies with respect to the Amended Rule 26(a)(1) Disclosures." [Dkt. #147-2, at 3 n. 1]. G&G argues, in the main, that these disclosures were untimely. In addition, G&G submits that, based on the descriptions of what 19 of the 25 potential trial witnesses know about the Castillos' claims, their testimony would be irrelevant.[3]

---

[3] Since G&G filed its motion to exclude witnesses, the parties have blanketed the court with filings: G&G's motion for reconsideration of the District Court's order granting the Castillos leave to file a Third Amended Counterclaim [Dkt. #173], the Castillos' Third Amended Class Counterclaim [Dkt. #178], the Castillos' Class Action Third-Party Complaint Against Thomas Reilly's Law Office [Dkt. #179], the Castillos' Class Action Third-Party Complaint Against DirecTV [Dkt. #180], DirecTV's Motion to Compel Arbitration and Stay Litigation [Dkt. #183], Memorandum in Support of DirecTV's Motion [Dkt. #184], G&G's Motion for Extension of Time to File Oversized Response to Third Amended Counterclaim [Dkt. #190], Law Office of Thomas Reilly's Motion for Extension Time to Respond to Third-Party Complaint [Dkt. #200], the Castillo's Response to DirecTV's Motion to Compel Arbitration [Dkt. #203]. The docket now tops out at about 3000 pages of activity, but additional briefs on many of these filings are to follow. All this because someone turned on a TV in a bar.

## II.

## ANALYSIS

## A.

The Federal Rules of Civil Procedure require a party to provide other parties with "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses . . . , identifying the subjects of the information." Fed.R.Civ.P. 26(a)(1)(A). Rule 26 also requires a party to supplement or amend its disclosures and discovery responses if it learns that the information disclosed or the response is "incomplete or incorrect and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P 26(e)(1). To ensure compliance with these discovery requirements, Fed.R.Civ.P. 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence . . . unless such failure was substantially justified or harmless." Fed.R.Civ.P. 37(c)(1). Whether a failure to comply with Rule 26(a) or (e) is substantially justified or harmless is left to the broad discretion of the district court. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011).[4] But, if the failure was not substantially justified or harmless, there is no discretion. Exclusion is *mandatory* and *automatic*. *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 972 (7th Cir. 2015).

The Castillos served their supplemental disclosures on February 8, 2016, three weeks before

---

[4] The Castillos mistakenly argue that their disclosures are due just 30 days before trial, pursuant to Fed.R.Civ.P. 26(a)(3)(B). [Dkt. #176, at 3]. But that rule refers to pretrial disclosures "[i]n *addition* to the disclosures required by Rule 26(a)(1) and (2)." Fed.R.Civ.P. 26(a)(3)(A)(emphasis added). This dispute is regarding the Castillos' supplementation of its Rule 26(a) disclosures as required by Rule 26(e). As such, Rule 37(c) applies.

the discovery deadline of March 1st.  That may appear timely on its face, and the Castillos' attorney

certainly assumed it was, given her stance at the March 9th hearing:

>THE COURT: And you think you can wait until the end.

>MS. CLAY: I didn't wait until the end.

>MR. ORDEANU: Judge, here is -- here is –

>THE COURT: Your duty of supplementation continues on.  Are you telling me that you didn't find out about the 66 people until -- until discovery was about to close?

>MS. CLAY: Your Honor, here is what I'm telling you:  I am one person, and I have to do all of this on my own. They have not provided me with anything. So those 66 –

[Dkt. #143, at 11].  Even after the hearing, counsel continues to maintain that the February 8th

barrage of supplemental witness disclosures was timely, as is clear from the Castillos' response

brief.  [Dkt. #176, at 2].  But the Castillos didn't supplement their disclosures with one or two or

even a few witnesses; they *added more than sixty*.  With three weeks left before discovery closed,

that was at best, presumptuous, and at worst, ridiculous.  It was also clearly a violation of the

requirement that disclosures be made in a timely manner.

"Timely manner" has to be read commonsensically if it is to mean anything at all.  To ensure

that it is, Local Rule 16.1 provides that "discovery must be completed before the discovery closing

date.  Discovery requested before the discovery closing date, but not scheduled for completion

before the discovery closing date, does not comply with this order."  In *RBS Citizens, N.A. v.

Husain*, 291 F.R.D. 209, 214 (N.D. Ill. 2013), Judge – now Chief Judge – Castillo found that a party

that disclosed a single witness two days before the discovery deadline could not reasonably have

expected that their opponent had a fair opportunity to depose him before discovery closed.  291

F.R.D. at 214; *see also Finwall v. City of Chicago*, 239 F.R.D. 504, 506 (N.D. Ill. 2006)(merely

serving expert reports before the deadline does not comply with the rules because discovery needs to be *completed* by that deadline).  If one deposition in two days is a violation of the rules, then more than sixty depositions – or even nineteen, if the roster were limited to the potential trial witnesses – in twenty-one days is an altogether cavalier disregard for them.

There is another troubling facet to what the Castillos have done.  Their eleventh-hour supplement was, effectively, a Trojan Horse.[5]  Whether by design or consequence, it paints the court into a corner in which it has to strike the disclosures or extend the discovery deadline.  That tactic is unacceptable.  *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)("Disclosures must not be used as a means to extend a discovery deadline."); *Finwall v. City of Chicago*, 239 F.R.D. 494, 502 (N.D. Ill. 2006); *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320 (5th Cir.1998) ("The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the . . . deadline"); *City of Grass Valley v. Newmont Mining Corp.*, 2007 WL 210516 at *2 (E.D.Cal., Jan.26, 2007)(". . . a party may not use a supplement to extend the discovery deadline . . . .").  Supplementation of disclosures is a *duty*, not a *right*.  *Carter v. Finely Hosp.*, No. 01 C 50468, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003); *Noffsinger v. Valspar Corp.*, No. 09 C 916, 2012 WL 5948929, at *2 (N.D. Ill. Nov. 27, 2012).  Was the Castillos' counsel so calculating?  One cannot guess what her plan was; but the court cannot ignore the fact that she also waited until the day after discovery closed to ask for an extension. That certainly gives the impression that she was bent on (or indifferent to) forcing the Court's hand.  To be fair, she has company, as G&G filed its motion for an extension of the

---

[5] The Castillos' Trojan Horse of over sixty witnesses was more daunting than even Virgil's, which was said to contain about forty men.  https://en.wikipedia.org/wiki/Trojan_Horse.

discovery deadline on the last day of discovery.

"We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception." *Raymond v. Ameritech Corp.,* 442 F.3d 600, 606 (7th Cir.2006). The parties do not "own" the discovery schedule, as they seem to think, suspending discovery on their own according to their whims. There is an overriding public interest in prompt resolution of legal disputes. *Gray v. Schaub*, 182 F.3d 921 (7th Cir. 1999); *Fort Howard Paper Co. v. Standard Havens*, Inc., 901 F.2d 1373, 1380 (7th Cir. 1990). There is not only a cost to the public at large, which is subsidizing a dispute resolution service, but to the other litigants waiting in the queue for the court's attention. *See Chapman v. First Index, Inc.,* 796 F.3d 783, 787 (7th Cir. 2015); *Fort Howard*, 901 F.2d at 1380; *R-Boc Representatives, Inc. v. Minemyer*, 66 F. Supp. 3d 1124, 1130 (N.D. Ill. 2014). As discovery drags on and on in one case, it takes time away from other cases. That concern is underscored here, where the parties seem to have needed almost constant supervision to resolve even the pettiest of disputes.

In this case, it is clear that the Castillos' voluminous supplemental disclosures were too late. We can add to that the fact that their motion for an extension of the discovery deadline was too late. Even their response to G&G's motion to exclude witnesses – filed May 10, 2016 [Dkt. #176], a day after the May 9th deadline [Dkt. #154] – was too late.[6] By all rights, the response should be stricken and not considered, but in the interest of resolving this matter with whatever input is available from both sides, a degree of leniency will prevail.

_____

[6]The Castillos counsel certifies that she filed the document on the ECF filing system on May 9, 2016 [Dkt. #176, at 10], but the electronic time stamp for the filing is 4:07 PM CDT on May 10, 2016, https://ecf.ilnd.circ7.dcn/cgi-bin/DisplayReceipt.pl?375605290333478-L_1_0-1(last visited 6/29/16), shows she was a day late.

**B.**

Accordingly, the question becomes whether the Castillos' failure to supplement their disclosures in a timely manner was "substantially justified or harmless." Fed.R.Civ.P. 37(c)(1). The Castillos make no attempt in their response brief to establish that their failure to comply with the rules was justified at all, let alone substantially justified. The Castillos filed their motion to certify a class that included people who had settled with, or had been sued by, G&G in similar situations as the Castillos on March 11, 2015. [Dkt. #31]. So, they had nearly a year in which to come up with a list of witnesses, many of whom could be identified in short order through a simple Westlaw or Lexis search. Even well before that, on May 10, 2014, the Castillos put forth their theory about G&G suing and threatening to sue a number of other business owners in their counterclaim. [Dkt. # 15]. That makes it nearly two years that the Castillos and their counsel have been operating under this theory. There is no excuse for their eleventh-hour supplementation.

In fact, the only excuse the Castillos' counsel has ever offered – and one that is wisely not reiterated in the response brief – is that she is only one person. [Dkt. #143, at 32]. Of course, that's no excuse at all. There aren't special rules and special deadlines for sole practitioners. *See Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006). "[N]eglect due to a busy schedule is not excusable," and there is a "limit to the quantity of cases a sole practitioner can professionally handle by h[er]self at any one point in time." *Id.* It certainly appears that counsel here exceeded her limit by deciding to morph the Castillos' case – which she likely would have no trouble handling competently and professionally – into a nationwide, class action conspiracy case. But, she made a tactical decision here to shoulder a much heavier load than her original case and she must live with the consequences of her struggles. *See Crowe ex rel. Crowe v. Zeigler Coal Co.*, 646 F.3d 435, 444

(7th Cir. 2011)(litigants must live with the consequences of their tactical decisions).

## C.

Then there is prejudice.  As to the vast majority of the witnesses the Castillos disclosed three weeks before the close of discovery, prejudice is clear.  The Castillos' violation of the rules meant there wasn't time to depose those witnesses.  *See David v. Caterpillar, Inc*., 324 F.3d 851, 857 (7th Cir. 2003)(among the factors courts should consider are prejudice or surprise to the party against whom the evidence is offered, and the ability of the party to cure the prejudice).  The fact that no trial date has been set does not negate this prejudice.  *See Rowe Int'l Corp. v. Ecast, Inc*., 586 F. Supp. 2d 924, 935 (N.D. Ill. 2008)(". . . the risk of "ambush" is not lessened in this case simply because we are not yet on the eve of trial.").  Discovery isn't merely about trial.  For example, it plays just as important a role in summary judgment proceedings.

The Castillos' attorney makes two points about prejudice.  One – that G&G was granted an extension of time to depose ten witnesses – will be addressed *infra*. The other will be addressed here, because it is truly mind-boggling and cannot be cast aside.  According to counsel, G&G was not prejudiced by 60 and then 100 late-disclosed witnesses because they were customers of G&G – "people with whom [G&G]'s counsel had dealt directly, and had personal knowledge of their testimony." [Dkt. #176, at 2].  There is a safe harbor for late-disclosing parties like the Castillos, but it covers only witnesses who had otherwise been made known to the opponent "during the discovery process or in writing."  Fed.R.Civ.P. 26(e)(1)(A).  There is no safe harbor covering witnesses a party has dealt with before.  One can imagine the Castillos' counsel undertaking a class action products liability case against General Motors and thinking nothing of revealing a million or so witnesses a couple of weeks before discovery closed and explaining that GM and their attorneys had dealt with

them before.

Another factor to be considered is whether the party offering the late disclosures acted in bad faith or willfully. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 640 (7th Cir. 2005); *David*, 324 F.3d at 857. Here, it is clear that the Castillos' counsel deliberately waited until the last minute, seemingly out of a concern for her convenience, with little thought given to her opponent and certainly with no thought given to the court's schedule. In a letter she attached to her belated motion to extend discovery, she explained to G&G's counsel: "I learn of and speak to additional victims frequently, [and] it is simply not feasible for me to amend my initial disclosures every time I become aware of new witnesses." [Dkt. #121, at 6].[7] Coupling that with her apparently cavalier attitude toward deadlines – again, even the deadline for filing her response brief in this matter – there is an undeniable element of willfulness to her conduct. As has already been explained, under such circumstances, exclusion is mandatory and automatic.

### D.

But, none of these considerations apply to the ten witnesses addressed in the order of March 9, 2016. [Dkt. # 131]. G&G was given plenty of additional time in which to depose those witnesses – indeed, it was given all the time it said it needed at the March 9th hearing. If G&G chose not to do so, so be it. That is a strategic choice it will have to live with now.

It is true that G&G attacks a number of the witnesses – nineteen – disclosed on other bases outside the scope of Rule 37(c); it argues some could offer only irrelevant testimony and some have

---

[7] In her objections to the March 9, 2016 scheduling order filed before the District Court Judge, the Castillos' counsel claims that she was so late with her supplement to her disclosure because she had "lost sight of the 26(a)(1)s." [Dkt. # 133, at 6]. That's quite a different scenario than what she indicated in her letter to G&G's counsel, which demonstrates that she never had any intention of amending her disclosures as she learned of new witnesses. The story seems to change according to the audience.

settled their cases. But it is left unclear in G&G's motion if these witnesses are among the ten that G&G had the opportunity to depose. [Dkt. # 147, at 8-11]. The Castillos refer to the ten witnesses without naming them in their response brief and, even though G&G takes them to task for that in its reply brief, it doesn't bother to name them either. [Dkt. #182, at 3]. G&G does say, again, that its motion to exclude does not apply to 22 of the disclosed witnesses, so it may be that the 10 are among that roster. But, this is never made clear.[8] What will be made clear is that whoever the ten witnesses are, G&G's motion must be denied as to them because G&G did, as the Castillos point out, have the opportunity to cure any prejudice that might have befallen it as a result of the late disclosures. *See Keach*, 419 F.3d at 640(court should consider the ability of the party to cure the prejudice); *Caterpillar*, 324 F.3d at 857(same).

In any event, issues such as relevance of testimony are more appropriately a matter for trial or perhaps a motion *in limine* closer to trial. *Wells v. Berger, Newmark & Fenchel, P.C.*, 2008 WL 4365972, at *7 (N.D. Ill. Mar. 18, 2008); *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1401 (N.D. Ill. 1993). Such determinations are better made within the context of a trial, when the true parameters of a case are known. That being said, one definitely must cast a jaundiced eye on the subjects the Castillos claim many of their dozens of witnesses can testify about.

For example, the Castillos disclose Daisy Gonzalez, who either works at or owns a bar/restaurant called Taqueria Los Comales. She is said to be able to testify about the events that

_____

[8] Indeed, the parties seem to have their own struggles with the identities of these witnesses, especially if their presentation at the March 9th hearing is any guide. For most of that hearing the parties didn't even seem to know how many witnesses there were. They began with eighteen [Dkt. #143, at 17-18], then changed it to twelve [Dkt. #143, at 22], then four [Dkt. #143, at 38], then three our four [Dkt. #143, at 40], then six or twelve or fourteen [Dkt. #143, at 40], then eleven [Dkt. #143, at 40], then more than eleven [Dkt. #143, at 40], then nineteen [Dkt. #143, at 40], then an additional five [Dkt. #143, at 41], then about ten to twelve [Dkt. #143, at 41], and finally, ten. [Dkt. #143, at 45].

occurred there on September 15, 2012. How that pertains to what occurred at the Castillos'
restaurant is a mystery, unless the Castillos are intending to parade five or six dozen supposed
Fed.R.Evid. 404 witnesses before the District Court Judge and jury at trial. [Dkt. # 147-2, at 7]. Far
worse, though, is the fact that the Castillos claim that Ms. Gonzalez can testify about how attorney
Thomas Riley goes about hiring his investigators [Dkt. # 147-2, at 3 (unfair standard business
practice number three -- Thomas Riley's investigator hiring, qualifications and contractor hiring
requirements), 7-8], and drafting and reviewing investigator affidavits. [Dkt. # 147-2, at 3 (unfair
standard business practice number four -- Thomas Riley's investigator hiring, qualifications and
contractor hiring requirements), 8]. How Ms. Gonzalez could know about the workings of Mr.
Riley's law office is also a mystery. The Castillos' list includes dozens of witnesses that raise
dozens of similar questions. There is nothing that even remotely suggests any of these witnesses
is qualified under Fed.R.Evid. 602 to testify on the subjects the Castillos claim they can. *Ani-Deng
v. Jeffboat, LLC*, 777 F.3d 452, 454 (7th Cir. 2015).

One final point should be made. Many of the listed witnesses have already settled with
G&G, and G&G argues that, as such, they will be barred from testifying under the confidentiality
provisions of their settlement agreements. But G&G does not provide any of these agreements *in
camera* or otherwise in order to demonstrate their terms and beyond a bald assertion, leaves this
argument completely undeveloped. Is the witness barred from testifying or does the witness's
decision to testify simply give rise to an action for breach? Settlement agreements, of course, are
just contracts. *See, e.g., Jones v. Ass'n of Flight Attendants CWA*, 778 F.3d 571, 573 (7th Cir.
2015)("A disagreement about whether parties to a settlement have honored their commitments is a
contract dispute."); *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002)("The settlement is just

another contract to be enforced in the usual way, that is, by a fresh suit."); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000)(party might be entitled to damages for any ensuing harm due to publicity). All G&G provides is its own assumption, and no court is going to exclude a witness based solely on one party's guess. Counsel's assertions are not evidence. *United States v. Gil-Lopez*, – F.3d –, –, 2016 WL 3349357, at *3 (7th Cir. June 16, 2016); *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008).

## CONCLUSION

The plaintiff's motion to exclude witnesses [Dkt. #146] is granted in part and denied in part. To the extent plaintiff's motion is directed at any of the ten witnesses covered in the March 9th order, it is denied. The motion is granted as to all the other witnesses.

ENTERED: _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 6-30-16